UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| BRANDON  KERVIN, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-102 |
| | § | |
| SUPREME SERVICE & SPECIALTY | § | |
| COMPANY, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER TRANSFERING CASE

This cause is before the Court on  the unopposed motion of Defendant Supreme Service & Specialty Company, Inc. ("Supreme") seeking the transfer of this Fair Labor Standards Act (FLSA) collective action to the Eastern District of Louisiana pursuant to 28 U.S.C. §1404(a) for the convenience of parties and witnesses and in the interest of justice. The motion is well-taken and due to be granted for the reasons set forth below.

## BACKGROUND FACTS

Plaintiff Brandon Kervin ("Kervin") asserts overtime claims under the FLSA on behalf of himself and all other allegedly similarly-situated workers who were employed by Supreme all over the country. Kervin lives in a town named Minden located in Webster Parish, Louisiana. [Doc.1 ¶2.1] Supreme's principal place of business is located in Houma, Terrebonne Parish, Louisiana. [Doc.1 ¶2.3] Supreme has approximately 450 employees operating from ten facilities across the United States. [Doc.1 ¶5.1] In particular, Supreme has operations/facilities located in Broussard, Houma, and Shreveport, Louisiana, and in Alice, Houston, Mineral Wells, Odessa, and Refugio, Texas. [Doc.1 ¶5.2] Supreme's workers are geographically dispersed, residing and working in different states across the country. Many of these workers do not have fixed work

locations, and may work in different states across the country in the course of a given year. [Doc.1 ¶6.16] In particular, Kervin and other employees in allegedly similar jobs were required to work throughout the States of Louisiana, Texas, and New Mexico. [Doc.1 ¶5.5]

## LEGAL STANDARD

A district court is authorized, "[f]or the convenience of the parties and witnesses, in the interest of justice," to transfer any civil action to any other district or division where the suit might have been brought. 28 U.S.C. § 1404(a). The goal of this provision is to "prevent the waste of time, energy[,] and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Shoemaker v. Union Pacific R.R. Co.,* 233 F. Supp. 2d 828, 829 (E.D. Tex. 2002) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

Two factors in the present case discount the usual weight given to the plaintiff's initial choice of forum. First, Kervin elected to file this lawsuit in a federal district court division located approximately 479 miles from his home town of Minden, Louisiana, rather than in his home forum of the Western District of Louisiana. *See Kettler v. Presstek, Inc.,* No. CIV. A. 3:03-CV-0846-, 2003 WL 21788870, at *2 (N.D. Tex. July 31, 2003) ("[Plaintiff's] home forum is … located in the Western, not the Northern, District of Texas. …. Kettler has filed suit outside his home forum, and his choice is therefore accorded reduced weight."). Second, Kervin has not filed only an individual lawsuit, but instead has asserted an FLSA collective action.  A "plaintiff's choice of venue is generally accorded less deference when the plaintiff seeks to represent a class of individuals." *Vassallo v. Goodman Networks, Inc.,* No. 5:14-CV-743-DAE, 2015 WL 502313, at *2 (W.D. Tex. Feb. 5, 2015) (citing *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)) (reasoning, in the context of the doctrine of forum nonconveniens, that "where there are hundreds of potential plaintiffs, all equally entitled

voluntarily to invest themselves with the ... cause of action ... the claim of any one plaintiff that a forum is appropriate ... is considerably weakened").[1]

As the party seeking transfer to another venue, Supreme bears the burden of demonstrating that the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966). To prevail on a motion to transfer venue for the convenience of the parties under §1404(a), the movant must demonstrate that the balance of convenience and justice weighs in favor of transfer. *See In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004); *McPherson v. Leam Drilling Systems, LLC,* No. 2:14–CV–00113, 2014 WL 4063983, at *3 (S.D. Tex. Aug. 15, 2014); *Blake vs. Archer Drilling LLC*, No. 2:14-CV-120, 2014 WL 3696280, at *1 (S.D. Tex. July 23, 2014); *West v. Oil States Industries, Inc.,* No. 2:14–CV–126,  2014 WL 3696345, at *1 (S.D. Tex. July 23, 2014).

This Court has discretion to determine whether a transfer pursuant to §1404(a) is proper based on an "individualized case-by-case consideration of convenience and fairness." *Shoemaker,* 233 F. Supp. 2d at 829 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). The threshold determination under § 1404(a) is whether the action could have been filed in the judicial district to which the transfer is sought. *In re Volkswagon AG*, 371 F.3d at 203. If the Court determines the action could have been filed in the judicial district to which the transfer is sought, the Court must next determine whether the transfer furthers the convenience of the

---

[1] *Accord Mateos v. Select Energy Servs., L.L.C.,* 919 F. Supp. 2d 817, 821 (W.D. Tex. 2013) ("A number of courts have held that a plaintiff's chosen forum is accorded less weight when the plaintiff seeks to represent a class of individuals.") (citing *In re Warrick*, 70 F.3d 736, 741 n. 7 (2d Cir.1995)) ("It is true ... that the plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action."); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("when an individual brings a derivative suit or represents a class, the name plaintiff's choice of forum is given less weight"); *Espenscheid v. DirectSat USA, LLC*, 708 F. Supp. 2d 781, 787 (W.D.Wis. 2010) ("because plaintiffs have brought this action in the hopes of representing a proposed national class, their choice of forum is entitled to less deference than it would be in an individual action"); *see also  Earley v. BJ's Wholesale Club, Inc.,* 2007 WL 1624757, *2 (S.D.N.Y. June 4, 2007) (finding in purported FLSA nationwide collective action that a "plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action").

parties and witnesses considering certain private and public interest factors. The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law governing the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*

## ADDITIONAL FACTS

Supreme's senior officers and owners are Thomas Fanguy (President) and Robert Fanguy (Vice-President). Thomas Fanguy is a resident of Chavin, which is a suburb of Houma, Louisiana, and he works at the company's Houma corporate headquarters. Robert Fanguy is a resident of Abbeville, Louisiana, and he works at the company's facility in Broussard, Louisiana. Fredrick Bourgeois, the company's Corporate Controller, reports to the company's President and is also a resident of Houma, Louisiana. (Bourgeois Decl. ¶¶2-3)

Supreme's Human Resources Director, Lawrence Robinson, reports to the Corporate Controller.   He is a resident of New Orleans, Louisiana.   The company's Chief Operating Officer-US Land, Jay Davis, reports to Vice-President Robert Fanguy. He lives in Katy, Texas, and works in Houston, Texas. The company's Transportation Coordinator, Robert McDonald, who will likely be a witness for Supreme in this lawsuit lives in Midlothian, Texas, and has an office there where he works some of the time. The company has no senior level officers or senior managerial employees who live or work within 100 miles of Corpus Christi, Texas. (Bourgeois Decl. ¶3)

All of Supreme's payroll, personnel, tax, and accounting records are maintained at the company's Houma, Louisiana corporate headquarters. (Bourgeois Decl. ¶2) All decisions about salaries, wages, bonuses, pay rates, and compensation structures for the company's employees are made by President Fanguy and Corporate Controller Bourgeois at the company's headquarters in Houma, Louisiana. (*Id.* ¶3Supreme has a district manager based in Alice, Texas, but decisions about these pay issues are not made at the district manager level.) (*Id.*)

Kervin was employed by Supreme as a pump operator.  (Bourgeois Decl. ¶4)  During the three year period prior to February 2015, Supreme employed 128 pump operators including Kervin. (*Id.* & Exh.1) According to Supreme's personnel/payroll records, of these 128 pump operator employees, 53 live in Louisiana, six live in Oklahoma, thirteen live in Corpus Christi, Texas, and the remaining 56 live elsewhere in Texas. (*Id.* & Exh.1)

<u>ANALYSIS</u>

As discussed below, Kervin's claims could have originally been filed in the Eastern District of Louisiana, the four private interest factors favor transfer, and two of the four public interest factors favor transfer, while the other two public interest factors are neutral or not implicated in this matter.

**A.**     **<u>Appropriate Venue</u>**

Under 28 U.S.C. §1391(b)(1), venue is proper in any district where the defendant resides. Where there is a corporate defendant like Supreme, under 28 U.S.C. §1391(c) and (d), venue is proper in any judicial district of a state where personal jurisdiction over the corporate defendant may be obtained. Thus, venue is proper in the Eastern District of Louisiana because Supreme has its principal place of business in that district.

B.      **Private Interest Factors**

      1.      *Relative ease of access to sources of proof*

The Eastern District of Louisiana courthouse is located in New Orleans which is considerably closer to Supreme's corporate headquarters than the 528 miles from Houma to Corpus Christi, Texas. The Eastern District courthouse is more conveniently located to Supreme's upper level managers Fanguy, Bourgeois, and Robinson. Supreme's payroll/personnel records also reflect that a minority of the potential members of the putative class reside in the Corpus Christi division while an overwhelming majority reside quite far from this division. Of the 128 pump operators employed by the company in the last three years, only 38 reside in the Corpus Christi division (29.7%).[2] In contrast, 53 workers (including Kervin) live in Louisiana (41.4%), and the remaining 37 workers live in Texas outside this division or in Oklahoma (28.9%). The total of workers living outside this division (90) represents 70.3% of the potential putative class. *Compare McPherson,* 2014 WL 4063983, at *4 ("211 of the potential class members live in the Houston Division. This amounts to 20% of the putative class. The Houston Division is the location with the largest concentration of potential class members.").

In *Blake*, this Court ruled this factor weighed in favor of transfer because "relative to Corpus Christi, Houston is the location of more putative class members and potential witnesses". 2014 WL 3696280, at *2. The same result should be reached in this case. Kervin, the decision-maker officials, and 41.4% of the putative class / potential witnesses live in Louisiana, while none of the decision-makers and only a relatively small minority of putative class members live in the Corpus Christi division.

---

[2] Thirteen live in Corpus Christi, ten live in Alice, six live in San Diego, three live in Kingsville, two live in Robstown, and one employee each lives in Ben Bolt, Concepcion, Falfurrias, and Orange Grove.

All of Supreme's payroll, personnel, tax, and accounting records which may be relevant to the challenged payroll decisions in this case are maintained at Supreme's Houma, Louisiana corporate office in the Eastern District of Louisiana. In the similar FLSA collective action case, *McPherson,* this Court found "a significant portion of the proof in this case will come from the records of the Defendant, including Defendant's policies relating to employee compensation, employee classification, job descriptions, personnel records, payroll records and other records relating to the Defendant's business practices" and that transfer to the Houston division was appropriate because those records were maintained at the company's operational headquarters in Conroe, Texas, not at the drilling sites in the Corpus Christi division. 2014 WL 4063983, at *4. This Court likewise found this factor weighed in favor of transfer in *West* because the relevant payroll/personnel records were located in the defendant's Pennsylvania corporate office rather than in the Corpus Christi division. 2014 WL 3696345, at *1.

> 2.    *Availability of compulsory process to secure the attendance of witnesses*

Supreme has advised it is not aware of any non-party witnesses other than putative class members who would have to be compelled by subpoena to testify. The fact that 70.3% of the potential putative class lives outside of this division "is important to the issue of compulsory process", as this Court held in *McPherson*, when considering the fact that 211 potential class members lived in the Houston division not the Corpus Christi division. 2014 WL 4033983, at *4.

> 3.    *Cost of attendance for willing witnesses*

The Fifth Circuit has adopted a "100 mile" rule, which provides "when the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re Volkswagen of America, Inc.,* 545 F.3d at 317 (citing *In*

*re Volkswagen I,* 371 F.3d 201, 204-205 (5th Cir. 2004)). "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which fact witnesses must be away from their regular employment." *Id.* The Fifth Circuit also recognizes that witnesses may suffer personal costs associated with being away from family and community. *Id.*

In *Blake*, this Court ruled "[t]he expenses Defendant's Houston employees would incur by travelling to Corpus Christi for trial clearly favors transfer" to the Houston division. 2014 WL 3696280, at *3.   In *West,* this Court likewise ruled that, because the plaintiffs resided in Pennsylvania and the corporate defendant's managerial employees worked at the corporate headquarters in Pennsylvania, the proposed Pennsylvania forum was more convenient for all potential witnesses. 2014 WL 3696345, at *2. Indeed, as the Court noted, "[p]laintiffs would have to travel a significant distance to Corpus Christi as they do not reside in this Division." *Id.* In *McPherson*, this Court similarly considered that most of the putative class and all of the employer's managers lived near Houston and held "[t]he additional travel expenses of the six potential class members who reside in the Corpus Christi division is clearly outweighed by the number of potential class members who live in the Houston Division." 2014 WL 4033983, at *4.

Due to the location of Kervin's residence, the residence of Supreme's corporate decision-makers, and the large majority of the putative class, the Eastern District of Louisiana is a more convenient forum for potential willing witnesses. This factor heavily favors transfer of the case.

### 4.    *Other practical problems*

This action has a strong connection to Louisiana because Supreme is headquartered there, the challenged payroll decisions were made there, Kervin lives there, the largest single percentage of putative class members live there, and a great bulk of the sources of documentary

and testimonial evidence are located there. The connection to Corpus Christi is weak because, aside from the small percentage of putative class members who live in the division, no evidence relevant to this case has a Corpus Christi nexus. Since this case is in the earliest stage, no practical problems, including undue delay would arise from a transfer. Given that Kervin could easily have filed this case in the Eastern District of Louisiana which is located significantly closer to his home than this Court, there is nothing to indicate that a transfer to Louisiana would unfairly shift the burden of inconvenience to him. Plaintiffs' counsel has also indicated that while his office is located in Corpus Christi, he is able to travel by air to New Orleans in the event of a transfer of the case. This Court found these same considerations favored transfer in the FLSA collective action cases, *McPherson,* 2014 WL 4063983, at *5; *Blake,* 2014 WL 3696280, at *4; and *West,* 2014 WL 3696345, at *3.

## C.   Public Interest Factors

### 1.   *Administrative difficulties flowing from court congestion*

The Eastern District of Louisiana has twelve active district judges and three district judges on senior status.[3]   In contrast, the undersigned is the only active district judge in this Division and is responsible for handling almost all cases filed in the Corpus Christi Division due to a long-running judicial vacancy.[4] This Court noted this public interest factor favored transfer in the three near factually identical FLSA cases of *Blake,* 2014 WL 3696280, at *4, *West,* 2014 WL 3696345, at *3, and *McPherson,* 2014 WL 4063983, at *5.

---

[3] http://en.wikipedia.org/wiki/United_States_District_Court_for_the_Eastern_District_of_Louisiana#Current_judges

[4] *See General Order 2014-16* (12/30/2014). Senior Judge Hilda Tagle receives 20% of the new civil cases filed in this division, excluding 28 U.S.C. §2255 cases, while Senior Judge Hayden Head and Senior Judge Janis Graham Jack are taking only 28 U.S.C. §2255 civil cases filed in this division. *Id.*

2.      *Local interest in having localized interests decided at home*

In *Blake*, this Court ruled as follows concerning this second public interest factor: "Houston has a stronger relationship to this case given that Defendant is headquartered there, Plaintiff did and does live there, and the decisions about the pay practices at issue were made there." 2014 WL 3696280, at *5.  The same can be said of the present case – Louisiana has a stronger connection to this case because Supreme is headquartered in Louisiana, Kervin did and does live in Louisiana, and the decisions about the at-issue pay practices were made in Louisiana. Louisiana has seen a comparable amount of oil and gas exploration, drilling, and production as south Texas, and thus the potential jurors in the Eastern District of Louisiana should have a familiarity with the business and live in the same communities as a significant number of the putative class members.  The single largest percentage of the putative class resides in Louisiana, and thus the residents of that state have a local interest having lawsuits involving their neighbors heard in their home state. The corporate officials of Supreme likewise have a local interest in defending their actions and decisions before the residents of the state where they live.

3.      *Familiarity of the forum with the law that will govern the case*

A Louisiana federal court would be just as familiar with the FLSA and just as competent to hear this type of FLSA claim as this Court. This factor is neutral.

4.      *Avoidance of unnecessary conflict of law or application of foreign law problems*

This factor is neutral because this case does not present any conflicts of laws or foreign law issues.

## Conclusion

This case could have been filed in the Eastern District of Louisiana. The majority of the relevant private and public factors weigh heavily in favor of transferring this case to the Eastern District of Louisiana for the convenience of parties and witnesses. Kervin's attorney does not oppose the transfer. Supreme's motion to transfer to that forum is GRANTED.  The Clerk is directed to transfer this case and all filed materials to the Clerk of the Eastern District of Louisiana.

ORDERED this 7th day of April, 2015.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE